Jeffrey A. LeVee (State Bar No. 125863)
jlevee@Jonesday.com
Kate Wallace (State Bar No. 234949)
kwallace@jonesday.com
Rachel Gezerseh (State Bar No. 251299)
rgezerseh@jonesday.com
Charlotte Wasserstein (State Bar No. 279442)
cswasserstein@jonesday.com
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA  90071.2300
Telephone:  +1.213.489.3939
Facsimile:  +1.213.243.2539

Attorneys for Defendant
INTERNET CORPORATION FOR
ASSIGNED NAMES AND NUMBERS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOTCONNECTAFRICA TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, et al.,<br><br>    Defendants. | Case No. CV 16-00862-RGK<br><br>Assigned for all purposes to the Honorable R. Gary Klausner<br><br>**NOTICE OF APPEAL**<br><br>**PRELIMINARY INJUNCTION APPEAL** |

Notice is hereby given that defendant Internet Corporation for Assigned Names and Numbers ("ICANN") hereby appeals in the above-captioned action to the United States Court of Appeals for the Ninth Circuit from the Order entered on April 12, 2016 (ECF No. 75), attached hereto as **Exhibit 1**, which granted a preliminary injunction in favor of the plaintiff. Pursuant to Ninth Circuit Rule 3-2, ICANN's Representation Statement is attached hereto as **Exhibit 2**.

Dated: May 11, 2016

JONES DAY

By: */s/ Jeffrey A. LeVee*
      Jeffrey A. LeVee

Attorneys for Defendant
INTERNET CORPORATION FOR
ASSIGNED NAMES AND NUMBERS

# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 16-CV-00862 RGK (JCx) | Date | April 12, 2016 |
|---|---|---|---|
| Title | *DotConnectAfrica Trust v. Internet Corporation for Assigned Names and Numbers & ZA Central Registry* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**   (IN CHAMBERS) Order re: Plaintiff's Motion for Preliminary Injunction (DE 16)

## I.   INTRODUCTION

On February 26, 2016, Plaintiff DotConnectAfrica Trust ("DCA") filed a First Amended Complaint ("FAC") against Defendants Internet Corporation for Assigned Names and Numbers ("ICANN"), and ZA Central Registry ("ZACR") (collectively "Defendants") alleging the following claims: (1) Breach of Contract; (2) Intentional Misrepresentation; (3) Negligent Misrepresentation; (4) Fraud & Conspiracy to Commit Fraud; (5) Unfair Competition (Violation of Cal. Bus. & Prof. Code. § 17200); (6) Negligence; (7) Intentional Interference with Contract; (8) Confirmation of IRP Award; (9) Declaratory Relief (that ICANN follow the IRP Declaration and allow the DCA application to proceed through the delegation phase of the process); (10) Declaratory Relief (that the registry agreement between ZACR and ICANN is null and void and that ZACR's application does not meet ICANN standards); and (11) Declaratory Relief (that the covenant not to sue is unenforceable, unconscionable, procured by fraud and/or void as a matter of law and public policy).

Presently before the Court is DCA's Motion for Preliminary Injunction. For the following reasons, the Court **GRANTS** the Motion.

## II.   STATEMENT OF FACTS

The following facts are alleged in the Complaint.

Defendant ICANN is the sole organization worldwide that assigns rights to Generic Top-level

Domains ("gTLDs"). In 2011, ICANN approved the expansion of the number of gTLDs available to eligible applicants as part of its 2012 Generic Top-Level Domains Internet Expansion Program ("New gTLD Program"). Examples of gTLDs include .Lat, .Wales, .Africa, and .Swiss. ICANN invited eligible parties to submit applications to obtain the rights to these various gTLDs. ICANN promised to conduct the bid process in a transparent manner, ensure competition, and abide by its own bylaws and the rules set forth in the gTLD Applicant's Guidebook. In March 2012, Plaintiff DCA submitted an application to ICANN to obtain the rights to the .Africa gTLD. DCA paid ICANN the mandatory application fee of $185,000. On February 17, 2014, Defendant ZACR also submitted an application for .Africa.

### A. Geographic Name Applications and the Governmental Advisory Committee

ICANN's Applicant Guidebook contains an overview of the application process. (Bekele Decl., Ex. 3 at 1-3–1-14, ECF No. 17.) After the administrative completeness check, ICANN conducts an initial evaluation of the application. (Bekele Decl., Ex. 3 at 1-7, ECF No. 17.) During the initial evaluation, ICANN conducts string reviews, which determine whether a gTLD is too similar to existing TLDs. (Bekele Decl., Ex. 3 at 1-7, ECF No. 17.) The initial evaluation also includes the geographic name evaluation, in which ICANN determines whether an application contains sufficient endorsements, along with determining whether an applicant has the requisite technical, operational, and financial capabilities to operate a gTLD. (Bekele Decl., Ex. 3 at 1-7, ECF No. 17.) Applicants can request an extended evaluation if it fails the initial evaluation. (Bekele Decl., Ex. 3 at 1-11, ECF No. 17.) Applicants who have successfully completed the initial evaluation (and the extended evaluation, if requested) proceed to the delegation stage, which includes executing a registry agreement with ICANN and conducting a pre-delegation technical test to validate information in the application. (Bekele Decl., Ex. 3 at 1-14, ECF No. 17.)

According to ICANN's policy and procedures, applicants for geographic gTLDs must obtain endorsements from 60% of the national governments in the region and no more than one written objection from the relevant governments or public authorities associated with the region. DCA obtained endorsements of the United Nations Economic Commission for Africa ("UNECA") in August 2008 and the African Union Commission ("AUC") in August 2009. In 2010, however, AUC sent a letter informing DCA that it has "reconsidered its approach" and "no longer endorses individual initiatives in this matter related to continental resource." (FAC ¶ 24, ECF No. 10.) The Guidebook states that a government may withdraw its endorsement only if the conditions of its endorsement have not been satisfied. Contrary to ICANN's allegations, DCA maintains that the AUC letter did not formally withdraw its endorsement of DCA because AUC did not have conditions on its endorsement.

On behalf of ICANN, InterConnect Communications ("ICC") performs string similarity and geographic review during the initial evaluation stage of the gTLD application process. ICC explained to ICANN that if the endorsements of regional organizations like AUC and UNECA were not applied toward the 60% requirement, neither DCA nor Defendant ZACR would have sufficient geographic support. (Bekele Decl., Ex. 19 & 23, ECF No. 17.) ICANN decided to accept endorsements from both AUC and UNECA. During its initial evaluation, the ICC was required to inform applicants of any problems with their endorsements. The ICC failed to inform DCA of any such problems. Therefore DCA assumed that its endorsements from AUC and UNECA were sufficient.

In 2011, AUC itself, attempted to obtain the rights to .Africa by requesting ICANN to include .Africa in the list of Top-Level Reserved Names, which would have made .Africa unavailable for delegation under the New gTLD Program. In a March 8, 2012 letter, the ICANN Board Chairman Stephen Crocker explained to AUC that ICANN could not reserve .Africa for AUC's use. However, Crocker explained, AUC could "play a prominent role in determining the outcome of any application" for .Africa as a public authority associated with the continent by (1) filing one written statement of objection, (2) filing a community objection, or (3) utilizing the Governmental Advisory Committee

("GAC") to combat a competing application. (FAC ¶ 69, ECF No. 10.) The Governmental Advisory Committee ("GAC") is an internal committee that considers applicants and provides advice related to governmental concerns. Under ICANN's rules, the GAC can recommend that ICANN cease reviewing an application if all of the GAC members agree that an application should not proceed because an applicant is sensitive or problematic. Membership on the GAC is open to representatives of all national governments. AUC became a GAC member in June 2012, apparently on the advice of ICANN.

Because AUC could not obtain .Africa directly through ICANN, AUC contracted with ZACR in March 2014. In exchange for AUC's endorsement, ZACR would assign to AUC all rights relating to .Africa upon its delegation to ZACR. Subsequently, because of AUC's interest in ZACR's application for .Africa, AUC used its influence as a GAC member to campaign against DCA's application. In June 2013, ICANN accepted the GAC's advice and rejected DCA's application for lacking the requisite endorsements. This decision was made amid DCA's objection that several members of the GAC had conflicts of interest and that Kenya was unrepresented at the GAC meeting. (Bekele Decl., Ex. 24 & 25, ECF. No. 17.) Contrary to ICANN's contentions, DCA maintains that the lack of unanimous support within the GAC rendered the decision to suspend DCA's application improper.

DCA further argues that, if ICANN applied the GAC's rationale for rejecting DCA's application equally to ZACR, ZACR's application should have failed as well. Specifically, applying the same standards, ZACR did not have sufficient country specific endorsements to meet ICANN's requirements: (1) only five of the purported endorsement letters from specific African governments referenced ZACR by name; and (2) ZACR filed support letters in which African governments generally endorsed AUC's "Reserved Names" initiative without specifically referencing ZACR. ZACR presumably passed the 60% threshold requirement based on the same regional endorsements that the GAC used to derail DCA's application. Nonetheless, ZACR passed the initial evaluation and entered into the delegation phase with ICANN.

### B. The Independent Review Process

As a means to challenge ICANN's actions with respect to gTLD applications, ICANN provides applicants with an independent review process ("IRP"). The IRP is arbitration comprised of an independent panel of arbitrators. In October 2013, DCA sought an IRP to review ICANN's processing of its application, including ICANN's handling of the GAC opinion. In its decision, the IRP Panel found against ICANN as follows: (1) ICANN's actions and inactions with respect to DCA's application were inconsistent with ICANN's bylaws and articles of incorporation; and (2) ICANN should refrain from delegating .Africa and permit DCA's application to proceed through the remainder of the evaluation process.

DCA asserts that ICANN did not act in accordance with the decision, which was binding. Instead of allowing DCA's application to proceed through the remainder of the application process (i.e. the delegation phase), ICANN restarted DCA's application from the beginning and re-reviewed its endorsements. In September 2015, during the second review, ICANN issued clarifying questions regarding DCA's endorsements, which it did not raise during the initial evaluation of these same endorsements. The DCA requested an extended evaluation, hoping to gain insight on what was wrong with its application. Rather than providing clarification, ICANN merely restated the same questions – allegedly as a pretext to deny DCA's application – then denied DCA's application in February 2016. Soon thereafter, ICANN began the process of delegating .Africa to ZACR.

On March 4, 2016, this Court issued a Temporary Restraining Order to prevent ICANN from delegating .Africa to ZACR until the Court decided this present Motion.

### III. JUDICIAL STANDARD

"[I]njunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). For a court to grant a preliminary injunction, a plaintiff must establish the following: (1) likelihood of success on the merits, (2) likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors injunction. *Id*. at 20.

The Ninth Circuit also employs a "sliding scale" approach to preliminary injunctions. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). This approach uses the same four factors as the *Winter* test, but allows the plaintiff to receive a preliminary injunction in situations where there are "serious questions" going toward the plaintiff's likelihood of success on the merits, so long as the "balance of hardships tips sharply in the plaintiff's favor." *Id*. at 1134-35. The plaintiff must still demonstrate a likelihood of irreparable harm and that public interest favors the injunction. *Id*. at 1135.

## VI. DISCUSSION

DCA seeks a preliminary injunction barring ICANN from issuing the rights to .Africa until this case is resolved. DCA moves for a preliminary injunction based on its Ninth Claim for Declaratory Relief. DCA's Ninth Claim seeks a judicial declaration that ICANN follow the IRP decision and allow the DCA application to proceed through the delegation phase of the application process. In determining whether relief should be granted, the Court addresses each of the relevant factors for preliminary injunction.

### A. Likelihood of Success on the Merits

#### 1. *The Release Does Not Bar DCA's Claim at This Time.*

As a preliminary matter, ICANN argues that DCA, by submitting a New gTLD Program application, is bound by the terms in the Applicant Guidebook. These terms include a Release barring applicants from challenging in court any decision made by ICANN. (Bekele Decl. 6-4, Ex. 3, ECF No. 17.) DCA argues, however, that the Release is unenforceable because it violates California Civil Code § 1668, is unconscionable, and was procured by fraud. The Court finds substantial questions as to the Release, weighing toward its unenforceability.

California Civil Code § 1668 finds that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property or another, or violation of law, whether willful or negligent, are against the policy of the law."

The Release applies to all gTLD applicants and states, in relevant part:

> Applicant hereby releases ICANN . . . from any and all claims by applicant that arise out of, are based upon, or are in any way related to, any action, or failure to act, by ICANN . . . in connection with ICANN's . . . review of this application. . . . Applicant agrees not to challenge . . . and irrevocably waives any right to sue or proceed in court.

(Bekele Decl. 6-4, Ex. 3, ECF No. 17.) On its face, the Release is "against the policy of the law" because it exempts ICANN from *any and all claims* arising out of the application process, even those arising from fraudulent or willful conduct. Cal. Civ. Code § 1668.

ICANN argues that Section 1668 is limited only to agreements involving the public interest,

which the Guidebook is not, and cites to *Tunkl v. Regents of Cal.*, 383 P.2d 441 (Cal. 1963) for support. However, *Tunkl* concerns the validity of a release from liability for negligence, not intentional acts or fraud. Here, the Release waives all liability, not just liability resulting from negligence. Thus, *Tunkl* is distinguishable, and the Court need not determine whether the Release is in an agreement involving the public interest.

ICANN further argues that, if the Release is found to violate Section 1668, the Court should limit its unenforceability to DCA's claims sounding in fraud. ICANN contends that because the request for preliminary injunction is based solely on DCA's Declaratory Relief Claim, which does not sound in fraud, the Release is enforceable as it pertains to this Claim. (Def.'s Opp'n to Mot. for Prelim. Inj. 15:12-14, ECF No. 35.) The Court disagrees. ICANN fails to recognize that the alleged conduct giving rise to this claim is intentional. Specifically, DCA alleges that ICANN intended to deny DCA's application after the IRP proceeding under any pretext and without a legitimate reason. (FAC ¶ 59, ECF No. 10.) DCA claims that "the process ICANN put Plaintiff through was a sham with a predetermined ending – ICANN's denial of Plaintiff's application so that ICANN could steer the gTLD to ZACR." (FAC ¶ 60, ECF No. 10.)

In support, DCA offers the following evidence. ICANN's initial evaluation report in July 2013 stated that DCA's endorsement letters "met all relevant criteria in Section 2.2.1.4.3 of the Applicant Guidebook." (Bekele Decl. ¶ 40, Ex. 27, ECF No. 17.) After the IRP Decision, ICANN performed a second evaluation on the same information originally submitted by DCA. In the second evaluation, however, ICANN found that the endorsement letters did not meet the same criteria applied in the first evaluation, and sent DCA clarifying questions regarding its endorsements. (Bekele Decl. ¶ 24, Ex. 15, ECF No. 17.) The clarifying questions required DCA to submit endorsement letters that "[d]emonstrate[d] the government's or public authority's understanding that the string is being sought through the gTLD application process and that the applicant is willing to accept the conditions under which the string will be available." (Bekele Decl. ¶ 24, Ex. 15, ECF No. 17.) The discrepancy between the pre-IRP and post-IRP evaluations led DCA to seek further clarification, specifically regarding the standard imposed on the endorsement letters at issue. However, in response, ICANN merely sent the same questions. (Bekele Decl. ¶ 26, Ex. 17, ECF No. 17.) DCA then submitted to an extended evaluation, which allows further review and is available to applicants who failed the initial evaluation. Without further communication, ICANN then issued a final decision that restated that the endorsement letters "did not meet the criteria described in Section 2.2.1.4.3 of the Applicant Guidebook." (Bekele Decl. ¶ 28, Ex. 18, ECF No. 17.) ICANN's conduct thereby rendered DCA's application ineligible for further review. (Bekele Decl. ¶ 28, Ex. 18, ECF No. 17.)

The evidence suggests that ICANN intended to deny DCA's application based on pretext. Defendants have not introduced any controverting facts. As such, the Court finds serious questions regarding the enforceability of the Release due to California Civil Code § 1668.

Because the Court finds serious questions regarding the enforceability of the Release due to California Civil Code § 1668, the Court need not address DCA's arguments regarding unconscionability or procurement by fraud.

2. *There Are Serious Questions as to the Merits of DCA's Ninth Claim.*

After its review, the IRP Panel declared: (1) "both the actions and inactions of the Board with respect to the application of DCA [] relating to the .AFRICA gTLD were inconsistent with the Articles of Incorporation and Bylaws of ICANN" and (2) ICANN "continue to refrain from delegating the .AFRICA gTLD and permit [DCA's] application to proceed through the remainder of the [New gTLD Program] application process." (Bekele Decl., Ex. 1 ¶ 61, ECF No. 17.) DCA alleges in its Ninth Claim that ICANN failed to follow the IRP Panel's binding order, resulting in ICANN's not properly

considering DCA's application.

After the IRP Decision, ICANN placed DCA at the geographic name evaluation stage of the application process and thereafter determined that DCA lacked the requisite support. (Bekele Decl. ¶ 28, Ex. 18, ECF No. 17.) DCA contends that ICANN violated the IRP Decision by restarting the geographic name evaluation, which it had already passed, rather than permitting the application to resume at the delegation phase. (Pl.'s Mot. for Prelim. Inj. 13:4-5, ECF No.16.) ICANN, however, argues that at the time DCA's application had been initially rejected, the application was still under review at the geographic name evaluation stage, and the evaluation was not yet complete. (Def.'s Opp'n to Mot. for Prelim. Inj. 17:20-22, ECF No. 35.) Accordingly, ICANN maintains that it placed DCA's application at the proper stage of evaluation after the IRP Decision.

Despite ICANN's contention, the evidence presents serious questions pointing in favor of DCA's argument. First, a March 2013 email from ICC to ICANN stated that ICANN needs to clarify AUC's endorsements since AUC properly endorsed both DCA and ZACR. (Bekele Decl. ¶ 30, Ex. 19, ECF No. 17.) Subsequently, ICANN's July 2013 initial evaluation report found that the endorsement letters have "met all relevant criteria in Section 2.2.1.4.3 of the Applicant Guidebook." (Bekele Decl. ¶ 40, Ex. 27, ECF No. 17.) Because ICANN found DCA's application passed the geographic names evaluation in the July 2013 initial evaluation report, the Court finds serious questions in DCA's favor as to whether DCA's application should have proceeded to the delegation stage following the IRP Decision.

ICANN further argues that even if ICANN failed to follow the IRP Decision, the Decision was only advisory, and not binding. The evidence does not provide clear indications on this point. On the one hand, the Panel concluded "that its [Decision] on the IRP and its future [Decision] on the Merits of the case were binding on the Parties." (Bekele Decl., Ex. 1 ¶ 23, ECF No. 17.) The Panel explains, "[v]arious provisions of ICANN's Bylaws and the Supplementary Procedures support the conclusion that the Panel's decisions, opinions and declarations are binding . . . [t]he selection of the [International Dispute Resolution Procedures] as the baseline set of procedures for IRP's, therefore, points to a binding adjudicative process." (Bekele Decl., Ex. 1 ¶ 23, ECF No. 17.) The Panel opined that if the decision is not binding, then at a minimum, "the IRP should forthrightly explain and acknowledge that the process is merely advisory." (Bekele Decl., Ex. 1 ¶ 23, ECF No. 17.) The IRP did not provide such explanation or acknowledgment. (Bekele Decl., Ex. 1 ¶ 23, ECF No. 17.) On the other hand, language in the IRP Decision states that the Panel "*recommends* that ICANN continue to refrain from delegating the .Africa gTLD and permit [DCA's] application to proceed through the remainder of the new gTLD application process." (Bekele Decl., Ex. 1 ¶ 149, ECF No. 17 (emphasis added).) It is clear the decision that ICANN violated its bylaws by failing to fairly review DCA's application is binding. However, it is *not* clear whether ICANN was mandated to permit DCA's application to proceed through the remainder of the process. Without extrinsic evidence as a guide, logic dictates that if the "recommendation" is, in fact, non-binding, the Panel's decision that ICANN violated its bylaws (which is undisputedly binding) is rendered ineffectual. Because the IRP is presumably in place to effect dispute resolution, and the IRP provided no explanation or acknowledgment that its decision was merely advisory, the Court finds serious questions on this issue.

For the reasons stated above, the Court finds serious questions going toward the merits of DCA's Ninth Claim.

**B.      Likelihood of Irreparable Harm**

As DCA points out, without preliminary relief, DCA will lose the opportunity to fairly have its application reviewed by ICANN. If DCA loses this opportunity, DCA will suffer irreparable harm because .Africa can be delegated only once, and only by ICANN. (Bekele Decl., Ex. 3 Application Terms and Conditions ¶ 3, ECF No. 17.) Further, only one entity can operate .Africa. (Bekele Decl., Ex. 3 at 4-2, ECF No. 17.) DCA has sufficiently demonstrated that, due to the unique nature of .Africa, it will likely suffer irreparable harm without preliminary relief.

Moreover, on March 4, 2016, the Court issued a temporary restraining order precluding ICANN from delegating the rights to .Africa until the Court rules on the present motion. (Order Granting TRO, ECF No. 27.) In that Order, the Court found that without a TRO, ICANN would have immediately delegated the rights to .Africa. (Order Granting TRO, ECF No. 27.) The Court finds no evidence indicating a change in circumstances. It is reasonable to believe that without a preliminary injunction, ICANN will immediately delegate the rights to .Africa to ZACR, causing DCA to suffer irreparable harm.

ICANN argues only that DCA cannot possibly suffer irreparable harm because it seeks compensatory relief. This argument is unavailing. Seeking compensatory damages does not preclude the Court from finding irreparable harm, as the control over .Africa cannot fully be compensated by money. *See Blackwater Lodge & Training Ctr., Inc. v. Broughton*, 2008 U.S. Dist. Lexis 49371 at *28 (S.D. Cal. 2008) (granting preliminary injunction despite plaintiff seeking monetary relief).

The Court thus finds that without relief, DCA will likely suffer irreparable harm.

**C.      Balance of Equities**

The balance of equities tips in favor of granting the preliminary injunction. Without a preliminary injunction, DCA will lose the opportunity to obtain rights to .Africa because ICANN will likely delegate the rights to ZACR prior to the conclusion of this action, and these rights can be delegated only once. DCA has invested much time and money in the application process under the representation that the process would be unbiased and fair. Although DCA may be able to recover certain funds through litigation, such as the application fee, the opportunity to obtain the rights to .Africa would be forever gone. ICANN's position, however, will be no different if it delays delegating the rights to .Africa. Thus, the balance of equities tips sharply in DCA's favor.

**D.      The Public Interest Favors Granting Preliminary Injunction**

The public interest favors granting a preliminary injunction. "The public interest analysis for the issuance of a preliminary injunction requires us to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011). Here, the public has an interest in the fair and transparent application process that grants gTLD rights. ICANN regulates the internet – a global system that dramatically impacts daily life in today's society. The IRP Declaration recognizes that ICANN's function is "special, unique, and publicly important" and ICANN itself "is the steward of a highly valuable and important international resources." (Bekele Decl.¶ 23.110, Ex. 1, ECF No. 17.)

ICANN argues that a delay in delegating .Africa will prejudice the African community's efforts to participate in the Internet economy and strengthen their technology sectors. (Def.'s Opp'n to Mot. for Prelim. Inj. 20:3-5, ECF No. 35.) The evidence supporting ICANN's argument is a declaration of Moctar Yedaly, the head of the Information Society Division of the AUC's Infrastructure and Energy Department. (Yedaly Decl. ¶ 11, ECF No. 40.) The AUC's relationship with ZACR, and its interest in

preventing the delay of issuing rights to .Africa creates a conflict of interest. Therefore, on this point, the Court accords little weight to the Yedaly Declaration. On balance, the Court finds it more prejudicial to the African community, and the international community in general, if the delegation of .Africa is made prior to a determination on the fairness of the process by which it was delegated.

For the reasons stated, the Court finds the public interest favors granting the preliminary injunction.

### E. Implementing the "Sliding Scale" Approach

Implementing the Ninth Circuit's "sliding scale" approach to preliminary injunctions, the Court finds "serious questions" going toward DCA's likelihood of success on the merits and a balance of hardships that tips sharply in DCA's favor. *Alliance for the Wild Rockies* at 1131. Additionally, the Court finds that both the likelihood of irreparable injury and the public interest favors the injunction. As such, the Court **GRANTS** a preliminary injunction barring ICANN from delegating the rights to .Africa until this case is resolved.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction.

**IT IS SO ORDERED.**

_____ : _____

**Initials of Preparer** _____

EXHIBIT 2

| | |
|---|---|
| 1 | Jeffrey A. LeVee (State Bar No. 125863) |
| | jlevee@Jonesday.com |
| 2 | Kate Wallace (State Bar No. 234949) |
| | kwallace@jonesday.com |
| 3 | Rachel Gezerseh (State Bar No. 251299) |
| | rgezerseh@jonesday.com |
| 4 | Charlotte Wasserstein (State Bar No. 279442) |
| | cswasserstein@jonesday.com |
| 5 | JONES DAY |
| | 555 South Flower Street |
| 6 | Fiftieth Floor |
| | Los Angeles, CA  90071.2300 |
| 7 | Telephone:  +1.213.489.3939 |
| | Facsimile:   +1.213.243.2539 |
| 8 | |
| | Attorneys for Defendant |
| 9 | INTERNET CORPORATION FOR |
| | ASSIGNED NAMES AND NUMBERS |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DOTCONNECTAFRICA TRUST, | Case No. CV 16-00862-RGK |
| Plaintiff, | Assigned for all purposes to the Honorable R. Gary Klausner |
| v. | |
| INTERNET CORPORATION FOR ASSIGNED NAMES AND NUMBERS, et al., | **REPRESENTATION STATEMENT** |
| Defendants. | |

# REPRESENTATION STATEMENT

The undersigned represents defendant-appellant Internet Corporation for Assigned Names and Numbers ("ICANN") and no other party. Pursuant to Ninth Circuit Rule 3-2(b), ICANN submits this Representation Statement. The following list identifies all parties to the action, and it identifies their respective counsel by name, firm, address, telephone number, fax number, and email address.

| Parties | Counsel |
|---|---|
| Plaintiff-Appellee DotConnectAfrica Trust | Ethan J. Brown<br>ethan@bnslawgroup.com<br>Sara C. Colón<br>sara@bnslawgroup.com<br>BROWN NERI & SMITH LLP<br>11766 Wilshire Boulevard, Suite 1670<br>Los Angeles, California 90025<br>Telephone: (310) 593-9890<br>Facsimile: (310) 593-9980 |
| Defendant-Appellant ICANN | Jeffrey A. LeVee<br>jlevee@Jonesday.com<br>Kate Wallace<br>kwallace@jonesday.com<br>Rachel Gezerseh<br>rgezerseh@jonesday.com<br>Charlotte Wasserstein<br>cswasserstein@jonesday.com<br>JONES DAY<br>555 South Flower Street<br>Fiftieth Floor<br>Los Angeles, CA  90071.2300<br>Telephone:  +1.213.489.3939<br>Facsimile:   +1.213.243.2539<br><br>Craig Stewart<br>cestewart@jonesday.com |

| | |
|---|---|
| | JONES DAY<br>555 California St., 26th Floor<br>San Francisco, CA 94104<br>Telephone: +1.415.626.3939<br>Facsimile: +1.415.875.5700 |

Dated: May 11, 2016

JONES DAY

By: */s/ Jeffrey A. LeVee*
      Jeffrey A. LeVee

Attorneys for Defendant
INTERNET CORPORATION FOR
ASSIGNED NAMES AND NUMBERS